# In the

# United States Court of Appeals
## For the Seventh Circuit

No. 00-2766

MICHAEL FLANAGAN, et al.,

*Plaintiffs-Appellants,*

*v.*

JOHN ASHCROFT, Attorney General
of the United States, and
DRUG ENFORCEMENT AGENCY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 2083—**Elaine E. Bucklo**, *Judge.*

ARGUED MAY 23, 2002—DECIDED JANUARY 21, 2003

Before FLAUM, *Chief Judge*, and BAUER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* After receiving a complaint that an instructor at its Chicago-based Basic Narcotics Training School used offensive language while conducting a seminar in the fall of 1994, the Drug Enforcement Agency began an investigation that eventually expanded to include five DEA agents who worked as seminar instructors: Michael Flanagan, Norbert Kuksta, Melvin Schabilion, Saul Weinstein, and Francis White. White resigned in the face of a proposal that he be terminated; the other agents were transferred to different cities. All five agents then

filed suit under Title VII charging that the DEA "mishandled" the investigation because they are white, male, and, in Weinstein's case, Jewish, and that the transfers, proposed dismissal, and other employment decisions were acts of retaliation for their opposition to unlawful employment discrimination. The district court dismissed the discrimination count and granted summary judgment for the DEA on the retaliation count, and the agents appeal.

As the basis for their discrimination claim, the agents alleged that the DEA's conduct of its investigation was "egregious" and "unprofessional," that the DEA treated the agents and other witnesses in a "hostile and accusatory manner" and in such a way as to "give credence to false accusations" and to cause the circulation among the Chicago law enforcement community of "untrue rumors concerning [the agents'] professional competence and alleged misconduct," and that the botched investigation resulted in a "sexually charged, racially charged, hostile and offensive working environment." The district court, thinking these allegations similar to those in *McDonnell v. Cisneros*, 84 F.3d 256 (7th Cir. 1996), dismissed the discrimination count for failure to state a claim upon which relief may be granted. The plaintiffs in *McDonnell* were HUD employees who were accused by an anonymous complainant of engaging in job-related sexual misconduct. *Id.* at 257. HUD initiated an investigation during which, according to the plaintiffs, investigators interviewed witnesses in a "hostile and unprofessional manner" and indicated "their personal belief that the plaintiffs were guilty of the charges," thereby "g[iving] rise to even more lurid rumors" that "made the plaintiffs pariahs" among their co-workers. *Id.* at 257-58. We affirmed the dismissal of the *McDonnell* complaint, holding that "an investigation of sexual harassment that exceeds the proper limits is [not] itself a form of actionable sexual harassment." *Id.* at 260-61. Permitting discrimination claims based on such inves-

tigations, we explained, would "place[ ] employer[s] on a razor's edge": ignore complaints of sexual harassment and face Title VII liability if the complaints are meritorious, or investigate them thoroughly and face discrimination claims from the targeted employees. *Id.* at 261; *see also, e.g., Malik v. Carrier Corp.*, 202 F.3d 97 (2d Cir. 2000) (relying on similar reasoning to hold that claim for negligent infliction of emotional distress may not be premised on an employer's sexual harassment investigation). We agree with the district court's conclusion that this case is on all fours with *McDonnell*; indeed, the allegations are nearly identical. The agents argue that their case is different because *any* investigation into their conduct would have been unwarranted; the very decision to investigate the complaint, they insist, is evidence of harassment. We see no important distinction, however, between a decision to investigate and the extent of an investigation. Moreover, the agents' suggestion that an employer is not *entitled* to investigate a sexual harassment complaint is untenable, *see, e.g., Malik*, 202 F.3d at 105 ("[A]n employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to investigate may allow a jury to impose liability on the employer."); *McDonnell*, 84 F.3d at 260 ("Employers who disregard charges of sex-related misconduct by their employees run a considerable risk of being sanctioned for having tolerated sexual harassment."), and in any event, as the language we quoted above makes clear, this was not the crux of the agents' complaint.

The district court granted summary judgment to the DEA on the retaliation count because the DEA introduced evidence showing that all employment actions taken against the agents were based solely on the original complaint, the ensuing investigation (in which the DEA found that each of the agents had engaged in miscon-

duct), and on a harassment suit filed against the agents by female seminar attendees and the attendant negative publicity. *See, e.g., Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.) ("If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment."), *cert. denied*, 123 S. Ct. 79 (2002). In their brief the agents assert that the district court ignored evidence showing that the DEA's explanation was pretextual, but they point specifically only to an unsworn document they call "the invidious list," which details instances in which the DEA purportedly favored minority and female employees. Because the agents' counsel disclaimed any reliance on the list as evidence of pretext at oral argument, we do not address it.

AFFIRMED.


A true Copy:

        Teste:


                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*