In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 23-1464

AMANDA JACKSON,

*Plaintiff-Appellant,*

*v.*

METHODIST HEALTH SERVICES
CORPORATION, doing business as
UNITY POINT HEALTH—CENTRAL
ILLINOIS,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:22-cv-01307-MMM-JEH — **Michael M. Mihm**, *Judge.*

_____

ARGUED DECEMBER 4, 2023 — DECIDED NOVEMBER 20, 2024

_____

Before ROVNER, SCUDDER, and PRYOR, *Circuit Judges.*

ROVNER, *Circuit Judge.* Plaintiff-appellant Amanda Jackson, a healthcare worker, filed suit against her former employer, Methodist Health Services ("Methodist"), after Methodist placed her on unpaid leave and then discharged her when she refused either to be vaccinated for Covid-19 or to

undergo weekly testing for the virus. Jackson alleges that Methodist discriminated against her on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by failing to accommodate her religious objections to the vaccine. But because we agree with the district court that Jackson's complaint and the attachments thereto reveal that Methodist did reasonably accommodate her religious objections, *see Jackson v. Methodist Hosp. Servs. Corp.*, 2023 WL 2486599 (C.D. Ill. Feb. 10, 2023), we affirm the dismissal of her complaint.

## I.

For purposes of this appeal, we accept the following allegations of Jackson's complaint as true. *E.g.*, *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). Jackson has attached a number of documents to her complaint that she both cites and relies upon in support of her claims. We will consider those documents, which are central to her claims, and incorporate them into our summary of the facts alleged. *See id.*; *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020); *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013); Fed. R. Civ. P. 10(c); 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1327 (updated through June 2024).

Jackson worked as a healthcare professional for Methodist in Central Illinois. (Her brief indicates that she is a nurse.)

On September 3, 2021, Illinois Governor J.B. Pritzker issued an executive order requiring that healthcare workers in Illinois begin the vaccination process for the Covid-19 virus by September 19, 2021, or be excluded from their places of employment unless granted an exemption from the vaccine

requirement by their employers. R. 1-1 at 4 § 2(b) & (e). A copy of the executive order is among the documents attached to the complaint.[1]

Jackson sought an exemption from the vaccine requirement due to her sincerely held religious beliefs (she objected to the use of fetal cell lines in the development and testing of Covid-19 vaccines, *see* R. 1 at 4 ¶ 17), and on September 13, 2021, Methodist granted Jackson a permanent religious exemption from the vaccination requirement, requiring as a condition of the exemption that Jackson wear a mask when she was working. The exemption was memorialized by way of a written letter from Methodist to Jackson which she has attached to her complaint. Methodist's directive that Jackson wear a mask while working was consistent with what Governor Pritzker's executive order required as of September 13. *See* R. 1–1 at 2–3 § 1 (requiring that masks be worn in healthcare settings regardless of vaccination status effective August 30, 2021).

However, beginning September 19, 2021, the Governor's executive order required that healthcare workers who were not fully vaccinated undergo, at a minimum, weekly testing for Covid-19. R. 1–1 at 4 § 2 (c)–(e). This requirement applied to persons who were granted an exemption from the vaccine mandate—including those for whom vaccination would require them to violate or forgo a sincerely held religious belief, practice, or observance, individuals for whom the vaccine

---

[1] The complaint alleges that the vaccination requirement took effect on September 27, 2021, but the executive order itself indicates that the effective date was September 19, 2021, so we shall rely on the date indicated in the executive order. The discrepancy is irrelevant to our evaluation of the legal sufficiency of Jackson's complaint.

was medically contraindicated, and those who had not yet completed a multi-shot vaccine regimen. Persons who were not vaccinated but did not submit to testing were to be excluded from healthcare workplaces. R. 1–1 at 4 § 2(c)–(e).

Jackson alleges that Methodist then "verbally"—i.e., orally—withdrew the vaccine exemption it had granted her on the 13th, advising her that the Governor's executive order "did not allow for such exemption." R. 1 at 2 ¶ 9. But what the balance of the complaint makes clear is that Methodist was now conditioning the vaccine exemption on her compliance with the executive order's requirement that she be tested weekly. Indeed, the complaint expressly alleges that Methodist "adopted policies which mandated Plaintiff to become vaccinated or submit to invasive testing." R. 1 at 21 ¶ 100. Jackson was opposed to testing in the absence of Covid symptoms and concluded that choice between vaccination or regular, asymptomatic testing violated her "moral conscience." R. 1 at 3–4 ¶¶ 11–16, 18; 10 ¶ 44. Jackson cited two principal reasons for that conclusion: (1) she was opposed to "health care procedures which she, a competent adult, does not believe are medically necessary" (R. 1 at 3–4 ¶ 16), and (2) she "holds sincere beliefs that prevent her from submitting to or participating in workplace procedures which arbitrarily discriminate between employees on the basis of health care choices made pursuant to freedom of conscience." (R. 1 at 4 ¶ 18). She was therefore unwilling to comply with the testing requirement, and as a result she was put on unpaid leave and ultimately discharged.

Jackson filed suit contending that the conditions Methodist imposed on her continuing employment were unlawful. Count I of her complaint alleged that Methodist violated Title VII in that the company failed to accommodate her religious

beliefs. Count III alleged that the requirement that she either be vaccinated or undergo weekly testing violated "the substantive and procedural due process requirements" set forth in section 2 of the Illinois Department of Public Health Act ("IDPHA"), 20 ILCS 2305/2. R. 1 at 24 ¶ 127.[2]

The district court dismissed her complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Although Jackson's theory of the case was that Methodist withdrew the vaccine exemption it had previously granted to her on religious grounds, the court found it plain from the complaint and the exhibits thereto that Methodist had neither denied nor withdrawn the exemption, but rather had modified the terms of the exemption to include the condition subsequently mandated by the Governor's executive order—*i.e.*, that she undergo weekly testing for Covid—and that Jackson had refused to comply. *Jackson*, 2023 WL 2486599, at *4.

Jackson secondarily argued in Count III that the testing requirement itself was discriminatory because, in her view, testing in the absence of Covid-19 symptoms was medically unnecessary and because the testing mandate imposed differential requirements based on her healthcare choices. (Jackson did not object to testing in the event she experienced symptoms of Covid-19, but she regarded the requirement that she undergo regular asymptomatic testing based on her unvaccinated status as arbitrary and irrational.) R. 1 at 3–4 ¶¶ 15–

---

[2] Count II of the complaint asserted a claim under the federal Emergency Use Authorization Act ("EUAA"), 21 U.S.C. § 360bbb-3, *et seq.*, as it relates to Covid-19 vaccines, a claim which the district court dismissed on the ground that the EUAA does not provide for a private cause of action. Jackson does not appeal that ruling.

18. But the district court pointed out that Jackson had not identified any religious tenet that was inconsistent with the testing requirement, which is what mattered for purposes of her Title II religious discrimination claim. *Jackson*, 2023 WL 2486599, at *4.

As noted, Jackson also asserted that Methodist's vaccination and/or testing requirements were contrary to the "due process" provisions of the IDPHA: she contended that Methodist had failed to follow the prescriptions of the statute, failed to consult with the Illinois Department of Public Health, otherwise exceeded its authority under that act, and had imposed burdens on Jackson and its other employees that were not the least restrictive means of furthering the legitimate state interest in protecting public health. R. 1 at 18–19 ¶¶ 86–88, 24 ¶¶ 124–28. Construing this claim as a Fourteenth Amendment due process claim, the district court concluded that the claim failed because Methodist was a private actor and it did not become a state actor simply by complying with state law (the governor's executive order), which mandated regular testing for unvaccinated individuals. *Jackson*, 2023 WL 2486599, at *5.

## II.

We review the district court's dismissal of Jackson's complaint pursuant to Rule 12(b)(6) de novo. *E.g.*, *Kahn v. Walmart Inc.*, 107 F.4th 585, 593 (7th Cir. 2024). We treat the complaint's allegations as true and draw factual inferences in the plaintiff's favor. *Id.* at 593–94. To survive a motion to dismiss, the factual allegations of the complaint must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint meets that standard when the plaintiff

"pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–87 (7th Cir. 2021). Jackson challenges the dismissal of her Title VII and IDPHA claims.

A. *Title VII claim*

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to the terms and conditions of her employment because of such individual's religion. § 2000e-2(a)(1); *Passarella v. Aspiris, Inc.*, 108 F.4th 1005, 1008 (7th Cir. 2024). One's religion, for purposes of the statute, includes all aspects of one's religious belief, observance, and practice, and the employer's duty not to discriminate on the basis of religion includes a duty to reasonably accommodate such belief, observance, and practice, unless the employer shows that it cannot make an accommodation without undue hardship. § 2000e(j); *Passarella*, 108 F.4th at 1008–09. A reasonable accommodation of one's religion is one that "eliminates the conflict between employment requirements and religious practices." *Rodriguez v. City of Chicago*, 156 F.3d 771, 775 (7th Cir. 1998) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986)).

The claim of religious discrimination as Jackson has initially framed it is premised on the notion that Methodist refused to grant Jackson an exemption from the vaccination requirement, or that Methodist granted but then refused to honor the exemption. But, as the district court reasoned, Jackson's complaint makes clear that Methodist in fact granted Jackson an exemption from the vaccine mandate, at first requiring only that she be masked at all times, and then subsequently mandating that she undergo weekly testing—in

compliance with the governor's executive order—which she refused to do. So, in the end, her objection is not to the vaccination requirement but to the requirement that she undergo regular, asymptomatic testing for Covid-19 as a condition of her exemption from the vaccination requirement.

Jackson has identified no objection to testing that is grounded in her religious beliefs. She opposes the testing requirement, yes, but she cites no religious tenet that is at odds with the testing requirement and no religious practice with which testing would interfere. Jackson has alleged that the testing requirement offends her "moral conscience" because, in her view, asymptomatic testing is medically unnecessary and effectively singles her out for discriminatory and arbitrary treatment based on her healthcare choices—including in particular her decision to opt out of vaccination on religious grounds. There certainly may be rejoinders to Jackson's criticisms of the testing requirement. It is worth noting, for example, that the testing requirement applied not just to those who were granted religious exemptions from the vaccine, but also individuals who had taken only the first of a two-shot vaccine regimen, as well as persons for whom the vaccine was medically contraindicated. And if, in lieu of testing, Jackson simply had been required to continue masking up while working—a condition to which she apparently did not object—that too could have been described as differential treatment based on her healthcare decisions. *See Bowlin v. Bd. of Dir. of Judah Christian Sch.*, 695 F. Supp. 3d 1003, 1008 (C.D. Ill. 2023), *appeal filed*, No. 23–3049 (7th Cir. Oct. 25, 2023). More to the point, what matters for purposes of Title VII is whether the testing requirement burdens Jackson's religious beliefs and practices, and in neither her complaint nor her briefs has Jackson

attempted to tie the testing requirement to any particular religious belief or practice.

The employer's duty under Title VII is to *reasonably* accommodate an employee's religious beliefs. In this case, Methodist accommodated Jackson's religious beliefs by exempting her from the vaccine requirement. Conditioning the exemption on weekly testing, a requirement imposed by the governor's executive order, was reasonable. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("courts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law," because "the existence of such a law establishes 'undue hardship'"); *see also Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) (per curiam); *Cassano v. Carb*, 436 F.3d 74, 75 (2d Cir. 2006) (per curiam); *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam); *Matthews v. Wal-Mart Stores, Inc.*, 417 F. App'x 552, 554 (7th Cir. 2011) (non-precedential decision) (Title VII does not obligate an employer to adopt an accommodation that would place it on the "razor's edge" of legal liability) (citing *Flanagan v. Ashcroft*, 316 F.3d 728, 729–30 (7th Cir. 2003)).

To the extent Jackson argues that a governor's executive order cannot qualify as a source of state law that Methodist was bound to follow, her argument runs headlong into our decision in *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1008–09 (7th Cir. 2021). *Bradley Hotel* held that the governor's executive orders suspending in-person dining, prohibiting large gatherings of people, and requiring all non-essential businesses to cease operations constituted "law" for purposes of an insurance policy provision excluding coverage

for "loss or damage caused directly or indirectly by … enforcement of or compliance with any ordinance or law … [r]egulating the construction, use or repair of any property." As we explained, when Governor Pritzker issued that order, he was exercising the powers that the Illinois legislature granted to him in the Illinois Emergency Management Agency Act, 20 ILCS 3305, section 7(12) of which authorized him to regulate "the use, sale or distribution of … materials, goods, or services; and perform and exercise any other functions, powers, and duties as may be necessary to promote and secure the safety and protection of the civilian population." *See Bradley*, 19 F.4th at 1009. The executive order at issue here relied on the powers vested in the Governor by the same statute. R. 1–1 at 2. To be sure, the context of this case differs in certain respects from that of *Bradley Hotel*, but Jackson does not acknowledge that decision, let alone attempt to distinguish it.[3]

We therefore uphold the district court's decision to dismiss Jackson's Title VII claim. Methodist granted Jackson a religious exemption from the vaccine mandate, subject to her agreement to undergo regular Covid-19 testing. Jackson has not made a case for why the testing requirement itself

---

[3] Jackson instead cites *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), for the proposition that an executive order cannot be elevated to the status of law. What *Youngstown* held, however, was that President Truman's 1952 executive order directing the seizure of U.S. steel mills to head off a nationwide work stoppage was not within the constitutional power of the President because it was not authorized either by an act of Congress or by any provision in the Constitution. By contrast, our decision in *Bradley Hotel* concluded that the executive order at issue there was authorized by the Illinois Emergency Management Agency Act. Jackson does not acknowledge this legislation, let alone make a case for the notion that it did not authorize the particular executive order at issue in this case.

burdened her religious beliefs and practices, nor has she explained why Methodist had the authority to exempt her from testing when the governor's executive order expressly required such testing as a condition of an exemption from vaccination.

B. *Claim under Illinois Department of Public Health Act*

Jackson's claim under the IDPHA is premised on the notion that when Methodist required her to undergo weekly testing for Covid-19 as a condition of her exemption from the vaccine, it deprived her of what the complaint describes as the "procedural and substantive due process" protections of the statute. Section 2 of the IDPHA sets forth the powers of the Department to address dangerously contagious or infectious diseases, including as relevant here the power to order the quarantine and isolation of individuals, to conduct physical examinations of individuals, administer tests and/or collect specimens from them, and to order the administration of medications, vaccines, and other treatments in order to prevent the spread of such diseases. When an individual does not consent to such actions, the exercise of the Department's powers is conditioned on compliance with certain safeguards, including notice and the right to a hearing for the affected person, the right to counsel, and a court order authorizing the Department to take such actions. Jackson contends that Methodist's actions in requiring that she submit either to vaccination or regular testing as a condition of her continued employment were inconsistent with the Act, in that Methodist as a private employer was not authorized to exercise powers given to the Department and Methodist did not afford her the procedural protections specified in the statute.

Although the district court quite understandably understood Jackson to be asserting a Fourteenth Amendment due process claim, given Jackson's references to the substantive and procedural due process components of the Illinois Department of Public Health Act,[4] Jackson's counsel indicated at oral argument that Jackson intended only to assert a claim for violation of the Act, not a federal constitutional claim. We therefore address the claim asserted in Count III of the complaint solely as a statutory claim.

So understood, the claim fails, because Methodist was not exercising (or purporting to exercise) the powers conveyed by section 2 of the statute when it demanded that Jackson undergo testing; rather, Methodist was acting as Jackson's employer to set the terms of the workplace religious accommodation that she requested. Illinois cases make clear that an Illinois employer has the inherent authority to adopt rules to promote workplace safety. *See Glass v. Dep't of Corr.*, 2022 IL App (4th) 220270, ¶¶ 27–30 (2022); *Thornton v. Dep't of Corr.*, 2023 IL App (5th) 220300-U, ¶ 26 (2023) (non-precedential decision); *Allen v. Bd. of Educ. of North Mac Cmty. Unit Sch. Dist. No. 34*, 2022 IL App (4th) 220307-U, ¶ 19 (2022) (non-precedential decision). And, of course, a healthcare provider has a paramount interest in protecting the safety not only of its own workforce, but of the individuals who seek medical care from such a provider. Jackson's sole rejoinder is to invoke the Supreme Court's decision in *Nat'l Fed. of Indep. Bus. v. Dep't of Labor, Occupational Safety and Health Admin.*, 595 U.S. 109

---

[4] Notably, Jackson's complaint did not invoke the district court's supplemental jurisdiction under 28 U.S.C. § 1367, an omission that also suggested Jackson was asserting a federal rather than a state claim in Count III of her complaint.

(2022) (per curiam). But *National Federation* held only that OSHA, as a federal agency charged with regulating workplace safety, lacked the authority to require all employers with more than 100 employees to compel their workers to either become vaccinated for Covid-19 or submit to regular testing. *Id.* at 117–20. The Court emphasized that although Covid-19 presented a public health problem, it did not present an occupational hazard in most workplaces. *Id.* at 118. Thus, although OSHA had the authority to address the Covid-related dangers presented in crowded or cramped workplaces where person-to-person viral transmission was more likely, for example (*id.* at 119), it did not have the authority to impose a sweeping mandate applicable to nearly all workplaces (*id.* at 119–20). Nothing in *National Federation* deprives individual *employers* of the power to address health and safety concerns in their own workplaces, *see Thornton*, 2023 IL App (5th) 220300-U, ¶ 25, and certainly nothing precludes a healthcare employer in particular from doing so.

## III.

Because Jackson's complaint fails to state a claim on which relief may be granted, we AFFIRM the district court's judgment.