**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2844
_____

THEODORE FEDEROFF; EMILY ADAMS; KATHLEEN ALLEN; DAVID BACON; SALLY MILLER; MELISSA BARON; WANDA BEAVER; AMANDA BELL; MARSHA BEZUHLY; CINDY BIRTH; KATHLEEN BIXLER; DEBORAH BONNELL; SANDRA BRENT; SCOTT BROWN; TINA M. EISENHAUER BUCKLES; CATHERINE BYERS; KATHY CALLAGHAN; TRACY CARVER; TAMMY CASWELL; JEANNE CHARLES; THERESA ANN CHIPOLET; STACEY COOK; PHILIP COYLE; MELODY DANKO-HOLSOMBACK; CRYSTAL DAVIS; PATRICIA DEMANICOR; JENNIFER DERR; MANDY DININO; KIMBERLY DOWNS; DIANNE EBERLE; RACHEL ENGLEHART-NOSS; BRITTANY FAUS; MELANIE FEICK; ALEXIS FETTERMAN; CHRISTINE LYNN FINKBEINER; KIMBERLY FRACE; SCOTT FRITZ; JULIANNA GAY; JUDY GOOD; AMY GORDON; TARA GRASLEY; BETHANIE GRESH; BRITTNEY HANNON; JAMES HANNON; BARBIE HARBAUGH; AMY HASARA; JULIANA HERRERA; MEGAN HESKETH; ARCHIE HOLSOMBACK, III; MARIEL HOPKINS; ANGELA HUMMEL; MICHELE JARROW; JESSECA JOHN; KAREN KARCHNER; CATHY KEELER; JESSICA KEMOCK; BETHANY KLINE-LEADBETER; LYNN KUZMITSKY; MARY LICHTER; TERRI LOCKCUFF; GALLAHAD MALLERY; VANESSA MILLER; KERI MILLER; BRIDGETTE MOLL; AMANDA MORTIMER; MELISSA MOYER; MELINDA NEWHART; RENEE NYE; GARRY OXENRIDER; CLAIRE PANAWAY; ALEXANDRA PORTELLI; KRISTY RITTENHOUSE; JAMES RIVA; KRISTY ROBINSON; TIA ROBINSON; BRIANA ROLSHAUSEN; CHRISTINA ROMANOWSKI; LARRY SALTZ; KIM SCHOOLEY; LARISHA A. SCOTT; MARISA SCOTT; JANELLE SHELLENBERGER; KIMBERLY SIPLER; TYLINN SMITH; KRISTY SNAVELY; RACHEL SNUKIS; RACHEL SNUKIS; JEANA SNYDER; BRINA SOTELO; MARNI STEWART; MARJORIE SWARTZLANDER; LORI TAYLOR; CONNIE TEMPLE; GABRIELLE TETER; JENNOFER A. THOMAS; ALEXA TOMASSACI; JEFFREY TOMMASSACI; TONNAS UNDERHILL; SHERRYL WAGNER; BRIDGETTE M. WARFORD; AMY WEIDNER; JENIFER WEMPLE; SUZANNE WICKHAM; JESSICA WYCHOCK; HEATHER YOHN; HEATHER YOST,
Appellants

v.

GEISINGER CLINIC; GEISINGER MEDICAL CENTER; GEISINGER HEALTH PLAN; GEISINGER LEWISTOWN HOSPITAL; GEISINGER WYOMING VALLEY MEDICAL CENTER; GEISINGER SYSTEM SERVICES; GEISINGER BLOOMSBURG HOSPITAL; GEISINGER COMMUNITY MEDICAL CENTER; GEISINGER POTTSVILLE CANCER CENTER; GEISINGER HAZELTON CANCER

CENTER; GEISINGER MAIL ORDER PHARMACY; WEST SHORE ADVANCED LIFE SUPPORT SERVICES, INC; GEISINGER SYSTEM FINANCIAL EDITS

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:21-cv-01903)
District Judge:  Honorable Matthew W. Brann

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 11, 2025

_____

Before:  KRAUSE, MATEY, and PHIPPS, *Circuit Judges*

(Filed: January 26, 2026)

_____

OPINION[*]

_____

PHIPPS, *Circuit Judge.*

A hospital network that required its employees to receive Covid-19 vaccinations granted an accommodation to employees who objected on religious grounds.  Under that accommodation, however, unvaccinated employees were required to test for coronavirus using a product allegedly sterilized using a carcinogen.  When employees lodged religious objections to that accommodation, their requests for exemptions to the testing requirement were denied, and they sued the hospital network under the Equal Protection Clause of the Fourteenth Amendment for discriminating against them and under Title VII for failing to provide them with a reasonable accommodation.  The hospital network moved to dismiss for failure to state a claim, and the District Court granted that motion.

The employee plaintiffs challenge that ruling in this appeal.  For the reasons below, we will affirm that judgment in part (with respect to the equal protection claim) and vacate

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

that judgment in part (with respect to the Title VII claims) and remand the case to the District Court.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In the early months of 2020, the Covid-19 pandemic began. In late August 2021, the Geisinger network of hospitals and medical centers in Pennsylvania implemented a Covid-19 vaccination mandate for its employees. Geisinger granted employees exemptions for religious and medical reasons. That exemption came on the condition that the exempted employee submit to twice-weekly nasal swab tests. After employees who had received religious exemptions discovered that the swabs were sterilized using ethylene oxide, a carcinogen, they requested a religious exemption from the testing program as well. Geisinger denied those requests.

In November 2021, employees of Geisinger sued fourteen Geisinger affiliates in the District Court. In a second amended complaint, 106 employee plaintiffs alleged that Geisinger was treating them differently based on their religious objections to the Covid-19 vaccines in violation of the Equal Protection Clause of the Fourteenth Amendment and related civil rights statutes. *See* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983; *id.* §§ 2000e, 2000e-2; 43 Pa. Stat. § 955(f). They also alleged that Geisinger's nasal-swab accommodation was not reasonable, and so it constituted religious discrimination in violation of Title VII. *See* 42 U.S.C. §§ 2000e, 2000e-2. Those allegations brought the claims within the District Court's federal-question jurisdiction, *see* 28 U.S.C. § 1331, and civil-rights jurisdiction, *see id.* § 1343(a)(3), and the employee plaintiffs sought declaratory and injunctive relief – but not damages.

After the suit was filed, the 106 employee plaintiffs moved for a preliminary injunction. The District Court denied that motion, *Federoff v. Geisinger Clinic*,

571 F. Supp. 3d 376, 392 (M.D. Pa. 2021), and the employee plaintiffs did not seek immediate appellate review of that ruling, *cf.* 28 U.S.C. § 1292(a)(1). Geisinger then began enforcing its testing policy, firing at least twenty-two employees over the next month for failing to comply.

In the midst of those firings, Geisinger moved for summary judgment. The District Court denied Geisinger's motion as premature and permitted the employee plaintiffs to amend their complaint again.

Only one of them, Christine Lynn Finkbeiner, took advantage of that opportunity. She filed a third amended complaint as a putative class action, which, in addition to the original claims, added state-law claims for intentional and negligent infliction of emotional distress.

Geisinger moved to dismiss Finkbeiner's complaint, as well as the claims of the 105 employee plaintiffs presented in the second amended complaint, for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). On August 26, 2022, the District Court granted Geisinger's motion and directed the clerk of court to close the case. But that order, referred to herein as the 'August 2022 Order,' did not expressly indicate that the 105 employee plaintiffs' claims were dismissed.

Through a timely notice of appeal, Finkbeiner attempted to challenge the August 2022 Order in this Court. In reviewing the August 2022 Order, however, this Court determined that it did not resolve the pending claims of the other 105 employee plaintiffs and thus was not a final decision subject to appellate review. *Finkbeiner v. Geisinger Clinic*, 2023 WL 6057495, at *2 (3d Cir. Sep. 18, 2023); *see also* 28 U.S.C. § 1291. Without another basis for appellate jurisdiction, this Court dismissed the appeal. *Finkbeiner*, 2023 WL 6057495, at *3; *cf.* Fed. R. Civ. P. 54(b).

4

After the case returned to the District Court, the employee plaintiffs tried to reinitiate discovery. The District Court, acting *sua sponte* under Rule 60(a), issued a correction to the August 2022 Order. *Federoff v. Geisinger Clinic*, No. 4:21-cv-01903, slip op. at 5 (M.D. Pa. Sep. 16, 2024) (JA7); *see also* Fed. R. Civ. P. 60(a). The District Court explained that it had intended to dismiss all claims in the August 2022 Order "since the pleadings all suffered from the same fatal defects," *Federoff*, slip op. at 4 (JA6), and it dismissed the remaining claims, *id.* at 5 (JA7).

All the employee plaintiffs except Finkbeiner filed a timely notice of appeal of that final decision. Having sufficiently invoked this Court's appellate jurisdiction, *see* 28 U.S.C. § 1291, those employee plaintiffs now argue that the District Court erred in three respects: (i) by relying on Rule 60(a) to amend the August 2022 Order; (ii) by dismissing their equal protection claims; and (iii) by dismissing their Title VII claims.[1] Those challenges each assert a mistake of law and are thus reviewed *de novo*. *See Monasky v. Taglieri*, 589 U.S. 68, 83 (2020).

## II. DISCUSSION

### A. The District Court Was Permitted to Correct Its Order Using Rule 60(a).

In challenging the District Court's reliance on Rule 60(a), the 105 employee plaintiffs argue that the rule can be used only to correct clerical mistakes and not to affect a party's substantive rights. *See Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129–30 (3d Cir. 2005). Rule 60(a) is broader than the employee plaintiffs contend. A district court may

---

[1] The 105 employee plaintiffs also attempt to challenge the dismissal of claims for intentional and negligent infliction of emotional distress brought by Finkbeiner in her third amended complaint, but because only Finkbeiner, who has not appealed, brought those claims, they may not be considered in this appeal. *Cf. Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

5

use it not only to correct a clerical mistake but also to cure an oversight or to remedy an omission:

> The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

Fed. R. Civ. P. 60(a); *see also* 11 *Wright & Miller's Federal Practice & Procedure* § 2854 (3d ed. Sep. 2025 update) ("Rule 60(a) permits the correction of clerical mistakes in judgments, orders, or other parts of the record *as well as* the correction of errors arising from oversight or omission." (emphasis added)). And here, the District Court used Rule 60(a) to remedy an omission. Its August 2022 Order granted the motion to dismiss Finkbeiner's third amended complaint – which, despite the title of that motion, requested the dismissal of not only Finkbeiner's amended complaint but also the claims brought by the other 105 employee plaintiffs who did not decide to amend their complaint again. As it later clarified, the District Court "intended" for the August 2022 Order "to address all claims presented by all Plaintiffs." *Federoff*, slip op. at 4 (JA6). In sum, because it acted to correct an omission in the August 2022 Order, the District Court did not err as a matter of law in relying on Rule 60(a) to do so. *See* 12 *Moore's Federal Practice* § 60.11[1][c] (3d ed. Sep. 2025) (explaining that Rule 60(a) may be used "to resolve an ambiguity in [an] original order to more clearly reflect [its] contemporaneous intent" (quoting *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992))).

## B. The District Court Did Not Err in Dismissing the Claims Premised on an Equal Protection Violation.

Geisinger moved under Rule 12(b)(6) to dismiss the employee plaintiffs' equal protection claims. To survive such a challenge, a complaint must contain plausible allegations of each element of a claim. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022). Because the Equal Protection Clause of the Fourteenth

Amendment governs the conduct of state actors, one of the elements of an equal protection claim is state action. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) ("Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be." (footnote omitted)); *cf.* U.S. Const. amend. XIV, § 1 ("No *State* shall . . . deny to any person within its jurisdiction the equal protection of the laws." (emphasis added)). The employee plaintiffs, however, have not plausibly alleged that Geisinger – a non-governmental network of hospitals and medical centers – satisfies that state action requirement. They attempt to do so based on Geisinger's receipt of state and federal funds, but that is insufficient: even "if the government funds or subsidizes a private entity," that alone "does not convert the private entity into a state actor." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019). Moreover, receipt of federal funds has little, if any, bearing on the *state* action requirement. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). Without plausible allegations of state action, the District Court did not err in dismissing the equal protection claims.

**C. The District Court Erred in Dismissing the Title VII Claims.**

Geisinger also moved under Rule 12(b)(6) to dismiss the employee plaintiffs' Title VII claims. It argued that the employee plaintiffs did not plausibly allege one of the elements of a Title VII religious discrimination claim: a sincere religious objection to a job requirement. *See Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 489–90 (3d Cir. 2017) (articulating the elements of a Title VII claim for religious discrimination in employment). Geisinger, however, did not dispute the sincerity of the employee plaintiffs' objection to the Covid-19 vaccine; instead, it contended that the employee plaintiffs'

7

objection to the nasal swab was not grounded in a religious belief or practice. The District Court relied on that rationale and dismissed the employee plaintiffs' Title VII claims. *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) ("[Finkbeiner's] stated beliefs about testing are medical, not religious, and therefore cannot support a religious discrimination claim."); *Federoff*, slip op. at 4 (JA6) (dismissing the second amended complaint for the same reason).

Title VII prohibits employers from making religion a factor in employment practices:

> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000e-2(m); *see also id.* § 2000e-2(a)(1) (proscribing religious "discriminat[ion] . . . because of [an] individual's . . . religion"). As a corollary to that prohibition, Title VII also requires that an employer provide a reasonable accommodation unless it can demonstrate that it would suffer "undue hardship":

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

*Id.* § 2000e(j); *see also Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) ("[A]n employer must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an 'undue hardship' for the employer." (quoting *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000))).

An unreasonable accommodation of religion may be demonstrated through two means. The accommodation may be unreasonable because it offends a sincerely held

8

religious belief or practice. *See Shelton*, 223 F.3d at 226 (explaining that an accommodation must account for "the employee's religious needs" (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986))). Alternatively, the accommodation may be unreasonable under the circumstances. *See Ansonia Bd. of Educ.*, 479 U.S. at 71 (explaining that "unpaid leave is not a reasonable accommodation when paid leave is provided for all purposes *except* religious ones," even though that proposed accommodation did not pose a religious problem for the employee); *see also Shelton*, 223 F.3d at 225–28 (explaining that the reasonableness of the accommodation may be evaluated based on the practical burden to the employee); *Cosme v. Henderson*, 287 F.3d 152, 160 (2d Cir. 2002) (evaluating an accommodation's reasonableness based partly on its practical burden to the employee). *Cf. generally Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024) ("A 'religious' objection can sound in *both* religious and non-religious terms.").

Here, the District Court correctly concluded that the employee plaintiffs do not state an unreasonable accommodation claim under the first approach. They do not allege that they have a religious objection to the nasal-swab accommodation. Nor can their religious objection be reasonably inferred from the allegations in the amended complaint. The employee plaintiffs did not articulate their sincerely held religious beliefs in opposition to the Covid-19 vaccine, and without providing the contours of any religious beliefs, it is not reasonable to infer that the basis for religiously objecting to the vaccine would also be a basis for religiously objecting to a nasal swab.

But offense to religion is not the only ground upon which an accommodation may be unreasonable – the accommodation may be unreasonable under the circumstances. *See Ansonia Bd. of Educ.*, 479 U.S. at 71; *Shelton*, 223 F.3d at 225–28; *Cosme*, 287 F.3d at

9

160. And here, at the pleadings stage, the employee plaintiffs have plausibly alleged the circumstantial unreasonableness of the accommodation: it required the twice weekly use of nasal swabs that were allegedly sterilized using ethylene oxide, a carcinogen. It may be that discovery will reveal that any potential exposure to ethylene oxide from twice weekly nasal swabs is not unreasonable under the circumstances, but at the pleading stage, these allegations suffice.

Moreover, as our dissenting colleague agrees, it is not the case that *any* accommodation to an employee's sincerely held religious belief ends the inquiry. Rather, the term 'accommodate' in Title VII is modified by the adverb 'reasonably.' 42 U.S.C. § 2000e(j). If all that Title VII required was that an employer accommodate an employee's sincerely held religious belief – no matter how burdensome the accommodation would be for the employee – the term 'reasonably' would do little, if any, work. Instead, Title VII would require only an accommodation of religion – not a *reasonable* accommodation of religion. There may be a temptation to read the modifier 'reasonably' to account for the employer's interests, not those of the employee whose religious beliefs are imperiled. But that is not a persuasive interpretation, because in the same provision, Title VII addresses the effect of an accommodation on an employer. It allows the employer to avoid Title VII liability by showing that the reasonable accommodation would impose an "undue hardship on the conduct of the employer's business." *Id.* Thus, the term 'reasonably' examines the impact of the accommodation on the employee, and the undue-hardship defense accounts for the employer's interests. *See Passarella*, 108 F.4th at 1012 (explaining that during discovery, the employer should develop evidence on "undue hardship," while "of course, [plaintiffs] will have an opportunity to offer their own perspective on what constitutes a reasonable accommodation").

10

Indeed, Geisinger invokes the undue-hardship defense to sustain the District Court's order of dismissal. *See Groff v. DeJoy*, 600 U.S. 447, 470 (2023) (explaining that 'undue hardship' requires "substantial increased costs in relation to the conduct of [an employer's] particular business"). But at this stage, that argument is premature. Undue hardship has been recognized as a fact-intensive affirmative defense to Title VII claims brought under a failure-to-accommodate theory. *See EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) (explaining that an 'undue hardship' defense necessitates a fact-intensive and context-dependent inquiry); *see also Bazinet v. Beth Isr. Lahey Health, Inc.*, 113 F.4th 9, 17 (1st Cir. 2024) ("Undue hardship in a Title VII religious discrimination case is an affirmative defense."); *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) ("Undue hardship is an affirmative defense . . . ."). And in this posture, where the allegations of the complaint are taken as true, *see Lutz*, 49 F.4th at 328, Geisinger's undue-hardship defense fails, *see Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024) ("Any inquiry as to whether [the defendant] offered [the plaintiff] a reasonable accommodation or would suffer an undue hardship by accommodating [the plaintiff] is generally not appropriately considered at the motion to dismiss stage."). Accordingly, the District Court erred in dismissing the Title VII claims.

### III. CONCLUSION

For the foregoing reasons, the District Court's dismissal of all claims brought by the 105 employee plaintiffs will be affirmed except for the Title VII claims, the District Court's order will be vacated with respect to the Title VII claims, and the case will be remanded.

11

KRAUSE, *Circuit Judge*, dissenting in part.

I join my colleagues in affirming the District Court's dismissal of the plaintiffs' equal protection claim, but I write (1) to explain why I dissent from the resurrection of the plaintiffs' Title VII claims, and (2) to offer guidance on the scope and sequencing of discovery on remand in light of my colleagues' reasoning.

I.

Title VII requires an employer "to make reasonable accommodation for the religious observances of its employees," *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977), meaning the accommodation the employer offers "eliminate[s] the religious conflict" and no better alternative is available "for all purposes except religious ones," *Shelton v. Univ. of Med. & Dentistry*, 223 F.3d 220, 226 (3d Cir. 2000). Here, the employer did just that by permitting the plaintiffs, as an alternative to vaccination, to screen for COVID-19 using nasal-swab testing kits that are ubiquitous in today's age and available over the counter at every major pharmacy in the United States.

Because the widely accepted practice of using a nasal swab to take an at-home COVID-19 test eliminated any conflict between the plaintiffs' religious objections and the employer's vaccination policy, it should be (as the District Court correctly reasoned) that our Title VII "inquiry is at an end." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986); *accord Jackson v. Methodist Health Servs. Corp.*, 121 F.4th 1122, 1126-28 (7th Cir. 2024) (affirming dismissal of Title VII claim where employer reasonably accommodated plaintiff's objection to receiving COVID-19 vaccine by requiring plaintiff to undergo regular testing).

Nor does the nasal-swab testing alternative present any independent basis for a Title VII religious-accommodation claim. The employer here required nasal-swab testing of *all* employees who received a vaccination exemption, whether for religious reasons or otherwise. As even my colleagues agree, the plaintiffs' objections to nasal-swab testing were medical, not religious, Majority Op. 9, and as we have explained, "a medical belief" is "not protected by Title VII," *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 492 (3d Cir. 2017); *accord Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 895-900 (9th Cir. 2025) (holding that a medical objection to an employer's COVID-19 nasal-swab testing accommodation because of carcinogenic risk did not state a Title VII religious-accommodation claim); *Jackson*, 121 F.4th at 1127 (similar).

Indeed, where, as here, a plaintiff "simply worries about the health effects of [a medical test], disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid this [test]," our precedent requires the claim for failure to accommodate a religious belief be dismissed with prejudice. *Fallon*, 877 F.3d at 492. That is because an employer need not offer the accommodation that "the employee suggests or prefers," or even the one "that least burdens the employee," *Shelton*, 223 F.3d at 225, so long as the accommodation "eliminates the conflict between employment requirements and *religious* practices," *Philbrook*, 479 U.S. at 70 (emphasis added).[1]

---

[1] This is not to say that "*any* accommodation" offered by an employer in response to a bona fide religious objection to a condition of employment is sufficient to evade Title VII's protections. Majority Op. 10. Certainly, there may be instances where an offered accommodation is so plainly onerous on the exercise of an individual's religion that a plaintiff could meet her burden at the pleading stage to set forth allegations that her employer did not satisfy its duty under Title VII. But that possibility finds no foothold in

2

As the nasal-swab testing accommodation accomplished that objective, I would affirm the District Court's dismissal of the plaintiffs' Title VII claims and dissent from that portion of the majority opinion.

## II.

My colleagues' reasons for breathing new life into the plaintiffs' Title VII claims carry important consequences for the appropriate scope of discovery permitted when this case returns to the District Court.

No one disputes that Title VII's protections against religious discrimination do not extend to assertions of medical risk that are merely generalized or speculative. *See Fallon*, 877 F.3d at 492. At the motion-to-dismiss stage, however, the allegations in the complaint are "taken as true," Majority Op. 11, and here, the complaint alleges that (a) the employer's "policy . . . required [them] to use a nasal swab that contained ethylene oxide," JA879, and (b) using that particular type of nasal swab would "subject them[] on a regular basis to a carcinogen," JA897.

Accepting both of those contentions as true, my colleagues are allowing the case to proceed toward summary judgment with discovery. But under Federal Rule of Civil Procedure 26(b)(1), that discovery must be "proportional to the needs of the case," and

_____

the allegations before us. Here, the employer accommodated the plaintiffs' religious beliefs by granting the plaintiffs exemptions from the vaccine requirement. Conditioning that exemption on weekly nasal-swab testing—a requirement imposed "[i]n response to the COVID-19 pandemic" by "employers across the country," *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 890 (9th Cir. 2025), and against which the plaintiffs did not lodge objections rooted in their *religious* beliefs, Majority Op. 9—as I see it, satisfied Title VII's prescription to reasonably accommodate an employee's religious beliefs.

3

here, even minimal discovery may discredit either allegation. That observation has two important consequences for the scope and sequencing of discovery on remand.

*First*, if targeted discovery reveals that the plaintiffs would have been permitted to use a brand of nasal-swab testing kit that did not contain ethylene oxide, the plaintiffs could not establish any injury traceable to the employer's policy and, therefore, would lack Article III standing. As then-Judge Kavanaugh explained in *Coalition for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275 (D.C. Cir. 2012), notwithstanding an individual's "genuine concern" about the purported harms associated with the specific mercury-based vaccine preservative at issue in that case, the ability to "readily obtain" a vaccine *without* that preservative would result in that individual having "suffer[ed] no cognizable injury," thus rendering the "lawsuit . . . not a proper subject for the Judiciary." *Id.* at 1277. Narrowly tailored discovery may establish that the same is true here.

*Second*, targeted discovery may also establish that the supposed carcinogenic risk associated with exposure to trace amounts of ethylene oxide in certain nasal swabs does not "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), particularly given the medical consensus that any such risk is not appreciable, *see, e.g.*, U.S. Dep't of Health & Hum. Servs., Agency for Toxic Substances & Disease Registry, *Clinician Brief: Ethylene Oxide* (Jan. 9, 2024), perma.cc/8RYA-AKEC (observing that any increased carcinogenic risk associated with exposure to ethylene oxide only occurs after "long-term (years or decades) cumulative exposure to elevated ethylene oxide concentrations"); U.S. Env't Prot. Agency, *Our Current Understanding of Ethylene Oxide (EtO)* (Mar. 17, 2025), perma.cc/J5KG-2BLX

(explaining that *billions* of medical devices and food products are sterilized and fumigated using ethylene oxide each year in the United States); U.S. Food & Drug Admin., *Sterilization for Medical Devices* (May 14, 2025), perma.cc/2RJK-52TN (detailing a "regulatory framework" to "ensure levels of ethylene oxide on medical devices are within safe limits").

We could, of course, take judicial notice of "matter[s] of common knowledge," *PPL Montana, LLC v. Montana*, 565 U.S. 576, 593 (2012) (Kennedy, J.) (quoting *United States v. Utah*, 283 U.S. 64, 77 (1931)), including "[w]ell-known medical facts," *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (quoting *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 n.2 (9th Cir. 1995)). But I understand my colleagues' reluctance at this stage to go beyond the four corners of the complaint and their decision to relegate consideration of such sources to summary judgment. My point is simply that, given the two allegations on which today's remand is premised, the District Court can and "should take care to circumscribe the scope of discovery" accordingly. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 n.20 (3d Cir. 2018) (citation modified); *see United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 259 (3d Cir. 2016) (explaining that "proportional discovery would counsel in favor of limiting the scope of early discovery" on remand); Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii) & advisory committee's note to 2015 amendment (limiting the scope of discovery to matters that are "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues").

5